UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RWJ MANAGEMENT CO., INC., *et al.*[1] | ) | Case No. 11-34845 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable Eugene R. Wedoff |
| | ) | |

**SUPPLEMENT TO OBJECTION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO ENTRY OF THE FINAL ORDER
FOR THE DEBTORS' MOTION FOR ORDER AUTHORIZING DEBTORS'
USE OF CASH COLLATERAL AND FOR RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "*Committee*") of RWJ Management Co., Inc. and its affiliated debtor entities (collectively, the "*Debtors*"), by and through its undersigned counsel, hereby submits this supplement (the "*Supplement*") to its objection (the "*Objection*") to the entry of a Final Order with respect to the Debtors' *Emergency Motion for Authority to Use Cash Collateral and for Related Relief* (the "*Motion*").[2] In support of its Supplement, the Committee states as follows:

**PRELIMINARY STATEMENT**

On October 11, 2011, the Committee filed its Objection, setting forth several bases to deny entry of the Debtors' proposed final Cash Collateral Order. Thereafter, on October 18, 2011, the Debtors circulated a copy of the proposed budget (the "*Budget*") for the period of

---

[1] Collectively, the Debtors and their case numbers are: RWJ Management Co., Inc. (11-34845); RWJ Management Co. II, Inc. (11-34915); RWJ Crestwood, LLC (11-34834); RWJ Plainfield, LLC (11-34936); RWJ Downers Grove, LLC (11-34939); RWJ Romeoville, LLC (11-34943); RWJ Forestview, LLC (11-34948); RWJ Yorkville LLC (11-34951); RWJ Wauconda, LLC (11-34959); RWJ Glen Ellyn, LLC (11-34961); RWJ Munster, LLC (11-34968); and RWJ Elmhurst, LLC (11-34971).

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion and the Objection.

October 21, 2011 through December 1, 2011. In addition to the issues raised in the Objection, the Budget shows that the Debtors intend to allocate $260,000 of funds to the Debtors' restructuring professionals over the next six weeks and an additional $165,000 that will be paid to professionals handling the BP Litigation for the Debtors. During this same time period, the Budget allots a mere $25,000 to the Committee's counsel and $25,000 to the Committee's financial advisor. Because the Debtors' Budget proposes to pay the professionals retained in these cases strikingly disparate amounts, the Committee believes the Cash Collateral Order is inequitable and in violation of the principles of title 11 of the United States Code (the "*Bankruptcy Code*").

## SUPPLEMENTAL OBJECTION

While the Debtors contend that the limited funds allotted for the Committee's professionals is merely an effort to lower costs for the estates, the Budget effectively marginalizes the Committee and elevates the administrative claims of the Debtors' professionals over those of the Committee. This attempt to wrestle any remaining voice away from the unsecured creditors for the purpose of frugality runs contrary to the very principles of the Bankruptcy Code. In addition to those issues raised in the Objection, the Committee submits that the proposed Final Order is objectionable for the reasons set forth herein.

**I.    The Budget Effectively Seeks to Marginalize the Committee**

In its current form, the Budget deprives the unsecured creditors of any meaningful representation. While the Budget provides the Debtors' professionals with funds more than sufficient to cover their fees and expenses, the Committee's professionals will receive a mere fraction of the amounts necessary to adequately represent the Committee's constituents. The Committee believes the Debtors intend to draft, and possibly file, a plan of reorganization during

the time period covered by the Budget. Under the current Budget, the Debtors are effectively seeking to minimize the Committee's involvement in the plan process by providing no funding on a go forward basis.

Providing the Committee with funds sufficient to execute its statutory duties is essential to the adversary system deeply rooted in the Bankruptcy Code. *See In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990). Courts have highlighted the importance of providing the Committee with financial support. *See id.*; *see also In re Evanston Beauty Supply, Inc.*, 136 B.R. 171, 176 (Bankr. N.D. Ill. 1992). This case is one in which BMO, BP and the Debtors all have interests at odds with those of the unsecured creditors. The role of an official committee of unsecured creditors in a chapter 11 case has been referred to as a "Statutory Watchdog." *See M.G. Andrews*, "The Chapter 11 Creditors' Committee: Statutory Watchdog," Bankr. Dev. J. 1985. Yet here, the Debtors' proposed Budget demands that the Committee operate on a shoe-string budget during the most significant events in these cases, while *the Debtors give their professionals over five times the amount allotted to the Committee's professionals*.

Simply stated, the Budget reveals the Debtors anticipate a substantial amount of activity on the part of the their professionals during the next six weeks, but the Debtors have effectively sought to marginalize the Committee by severely limiting their resources during this same time period.

## II. The Budget Controverts the Principles Underlying the Bankruptcy Code

The Budget proposes that the Debtors will operate within certain financial constraints that will allow them to continuously maintain sufficient funds so that BMO's total collateral package never falls below the level as of the Petition Date. *See In re Addison Properties, Ltd. P'ship.*,

3

185 B.R. 766, 784 (Bankr. N.D. Ill. 1995) (stating "if the underlying collateral is not declining in value or at risk of declining in value, the additional cash collateral may be used by the debtor to pay administrative expenses . . . ."). While the Committee undoubtedly agrees with the Debtors' desire to operate at a level above the value of the collateral package, the Debtors cannot manufacture this result by ignoring certain administrative claims, such as the fees and expenses of the Committee's professionals.[3]

Indeed, at least on bankruptcy court in this District has refused to approve orders in which there is a disparity between the funds allotted to the debtors' professionals in comparison to other estate professionals.. *See Ben Franklin Retail Store Inc.*, 210 B.R. 315 (Bankr. N.D. Ill. 1997). The *Ben Franklin* Court dealt with the issue in the context of payment under section 506(c), in which the debtors' professionals reached an agreement with the secured lenders that contemplated the debtors' counsel would receive a larger percentage of their fees than the other estate professionals. *See Id.* at 316. Judge Ronald Barliant, presiding, reasoned that the professionals were creditors of the same priority level and were therefore entitled to an equal distribution. *See Id.* at 318. To this end, Judge Barliant added, "[i]f a debtor in possession's attorney who liquidates an encumbered asset has no priority claim to the proceeds as against other professionals, then there is no reason that such efforts will give rise to such a priority when the asset is encumbered." *Id.* Accordingly, the Budget, as currently set forth by the Debtors, provides for disparate treatment of holders of administrative claims of the same priority level, and should thus be disallowed.

---

[3] One alternative proposal the Debtors have raised would allow the Committee an additional weekly budgeted amount, so long as BMO agrees such amount is not considered a reduction in the value of its collateral package. This would essentially make the weekly budgeted amount a "carveout" from BMO's collateral, and the Committee wholly supports this concept. At the time of this Supplement, however, BMO had not agreed to this proposal.

4

More importantly, the Budget's failure to properly account for all administrative expense claims could require the disgorgement and reallocation of funds at a later date. There is a risk that these cases will become administratively insolvent during the period covered by the Budget. If the cases become administratively insolvent, administrative claimants are only entitled to receive a pro rata distribution and disgorgement may be necessary to effectuate such a result. *See e.g., Matz v. Hoseman,* 197 B.R. 635, 640 (N.D. Ill. 1996) (stating professionals "are on notice of the potential for disgorgement should the estate be unable to pay all of its administrative expenses."); *In re United Refuse LLC,* 2007 WL 1695337 (stating "[d]isgorgement . . . is properly raised where, for example, there is an administrative insolvency and a need to equalize, on a pro rata basis, amounts previously distributed to professionals, or if, in approving a final fee application the allowed fees are less than those previously paid.") *see also In re Resource Technology Corp.,* 356 B.R. 435, 448 (Bankr. N.D. Ill. 1993) (stating "[i]n an administratively insolvent chapter 11 case, parties who provided benefits to the estate – by definition, all of the chapter 11 administrative creditors – receive less than the full value of their services."); *In re Pudgie's Development of NY, Inc.* 239 B.R. 688, 693 (S.D.N.Y. 1999) (stating "[i]f the bankruptcy estate is insolvent, under the majority position the landlord is paid with the other administrative claims on a pro rata basis.").

Based on the foregoing, the current Budget prefers certain administrative claim holders over others, and creates the distinct possibility that disgorgement would be necessary to effectuate a pro rata distribution to all holders of administrative claims. Such a situation would be distasteful to all parties and further involve this Court in what should be a perfectly avoidable situation if handled properly now.

## CONCLUSION

For the foregoing reasons, the Committee submits that the proposed Final Order represents inequitable treatment that severely prejudices the Committee and its constituents. The Committee thus requests that the Motion be denied unless modifications are made to the Final Order in the manner requested herein and in the Objection.

Dated:  October 20, 2011          **OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF RWJ MANAGEMENT CO., INC.,** *et al.*

By:     /s/ Aaron L. Hammer
              One of Its Attorneys

Aaron L. Hammer, Esq.
Richard S. Lauter, Esq.
Devon J. Eggert, Esq.
FREEBORN & PETERS LLP
311 South Wacker Drive, Ste. 3000
Chicago, Illinois 60606-6677
Telephone:  312.360.6000
Facsimile:   312.360.6995