**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RWJ MANAGEMENT CO., INC., *et al.*[1] | ) | Case No. 11-34845 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | Honorable Eugene R. Wedoff |
| | ) | |

**SECOND SUPPLEMENT TO OBJECTION OF THE OFFICIAL COMMITTEE
OF UNSECURED CREDITORS TO ENTRY OF THE FINAL ORDER
FOR THE DEBTORS' MOTION FOR ORDER AUTHORIZING DEBTORS'
USE OF CASH COLLATERAL AND FOR RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "*Committee*") of RWJ Management Co., Inc. and its affiliated debtor entities (collectively, the "*Debtors*"), by and through its undersigned counsel, hereby submits this second supplement (the "*Second Supplement*") to its objection (the "*Objection*") to the entry of a Final Order with respect to the Debtors' *Emergency Motion for Authority to Use Cash Collateral and for Related Relief* (the "*Motion*").[2] In support of its Second Supplement, the Committee states as follows:

**PRELIMINARY STATEMENT**

On October 11, 2011, the Committee filed its Objection, setting forth its basis to deny entry of the Debtors' proposed final Cash Collateral Order. Thereafter, on October 18, 2011, the Debtors circulated a copy of the proposed budget over the next six weeks, starting on October 21, 2011 and ending on December 1, 2011. Accordingly, on October 20, 2011, the Committee

---

[1] Collectively, the Debtors and their case numbers are: RWJ Management Co., Inc. (11-34845); RWJ Management Co. II, Inc. (11-34915); RWJ Crestwood, LLC (11-34834); RWJ Plainfield, LLC (11-34936); RWJ Downers Grove, LLC (11-34939); RWJ Romeoville, LLC (11-34943); RWJ Forestview, LLC (11-34948); RWJ Yorkville LLC (11-34951); RWJ Wauconda, LLC (11-34959); RWJ Glen Ellyn, LLC (11-34961); RWJ Munster, LLC (11-34968); and RWJ Elmhurst, LLC (11-34971).

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion, the First Supplement, the Objection and the Proposed Order.

filed its Supplement to the Objection (the "*First Supplement*"), setting forth its contention that the Debtors' budget demonstrated an attempt to marginalize the Committee.

On October 21, 2011, counsel for the Debtors, BMO and the Committee (collectively, the "*Parties*") appeared in Court for a hearing on the Debtors' continued use of cash collateral, at which time the Debtors and BMO expressed to the Court that they had reached an agreement for the continued use of cash collateral. The Debtors and BMO subsequently presented to the Committee a copy of the proposed final cash collateral order (the "*Proposed Order*"),[3] which included numerous objectionable terms that violate the spirit and letter of the Bankruptcy Code and, if approved by this Court, would significantly impair the rights of unsecured creditors and their prospect for recovering anything meaningful in this proceeding if the BP Litigation does not strike gold. In total, the Proposed Order offers considerable and extraordinary rights to BMO and the Debtors' shareholders (who incidentally are guarantors of the BMO indebtedness), at the direct, complete and final expense of these Estates. Such protections are both unwarranted and inequitable and cannot be approved by this Court.

## SECOND SUPPLEMENTAL OBJECTION

Given this unfortunate reality, in addition to the objections set forth in the Objection and the First Supplement, the Committee objects to the Proposed Order as follows:

I.    **The Proposed Order Provides Overly Broad Protections and Rights to BMO.**

- **Proposed Term:** Paragraph 4(a) seeks to find that BMO's Prepetition Liens are fully perfected and enforceable, and that its Prepetition Debt is not subject to avoidance, recharacterization, or subordination.

    o **Objection:** This term attempts to prematurely terminate the Committee's authority to raise any objections or otherwise contest the

---

[3] A copy of the Proposed Order is attached hereto as **Exhibit A**.

validity, extent, amount, perfection, priority or enforceability of BMO's Prepetition Debt or the Prepetition Liens. Under the first interim Cash Collateral Order, entered by this Court on August 31, 2011, the Committee was granted sixty (60) days from its formation to investigate *inter alia* BMO's prepetition liens. *See* Dkt. 32, p. 10, ¶ 18. Accordingly, as the Committee was formed on September 6, 2011, the Committee is authorized to bring a challenge until November 5, 2011. The Committee has not waived this right and its investigation remains ongoing at this point. As evidenced by its pending motion for standing to raise claims against BMO (the "*Committee Standing Motion*"), the Committee has already found certain *serious* deficiencies in the perfection of BMO's Prepetition Liens.

- **Proposed Term:** The Final Order deems the proceeds of the BP Litigation to be cash collateral of BMO.
    - o **Objection:** As set forth in more detail in the Committee's initial Objection and the Complaint attached as Exhibit A to the Committee's Motion for Standing, BMO has no secured interest in the BP Litigation or its proceeds. The Proposed Order encumbers the BP Litigation Proceeds, primarily for BMO's benefit, in gross violation of the Bankruptcy Code's statutory scheme and likely at great expense to the estates' unsecured creditors.
- **Proposed Term:** Paragraph 4(e) of the Final Order states that BMO's collateral will not be subject to any surcharge under section 506(c) of the Bankruptcy Code.

3

- o **Objection:** The Committee submits that it is premature for the Debtors to waive any right to surcharge the collateral of BMO, as future actions in this case may well warrant surcharging BMO's collateral. Further, the language of the waiver is so broad that it would waive not only the Debtors' surcharge rights, but those of any subsequent trustee.

- **Proposed Term:** Paragraph 4(i) seeks to deprive both the Debtors and the Committee of all cramdown rights under any plan filed in these chapter 11 cases.

  - o **Objection:** For the Debtors and Committee to be forced to waive their rights to seek to confirm a reorganization plan in accordance with section 1129(b) of the Bankruptcy Code is wholly improper at this stage of these Cases and simply cannot be granted no matter what the circumstances.

- **Proposed Term:** Paragraph 5(g) seeks to exempt BMO from the doctrine of marshalling.

  - o **Objection:** The relief requested in Paragraph 5(g) effectively deprives the Committee of its right to seek to compel BMO to proceed first against the Guarantors before it moves against the Prepetition Collateral. Accordingly, the Committee submits that this added protection in favor of BMO is inequitable and further appears designed to benefit the Guarantors at the estates' expense.

- **Proposed Term:** Paragraph 5(h) seeks to provide BMO with the unrestricted authority to credit bid its Prepetition Debt with respect to any bulk or piecemeal sale of all or any portion of the Debtors' Aggregate Collateral.

  - o **Objection:** Granting BMO the unrestricted right to credit bid its Prepetition Debt would have a substantial impact on any potential sale,

4

possibly diminishing potential returns. Accordingly, such a term is premature and should be addressed should the Debtors propose to sell any or all of their assets in a sale pursuant to section 363 of the Bankruptcy Code.

## II. Objections Relating to the Reorganization Reserve

- **Proposed Term**: The Debtors and BMO seek to create a reserve fund (the "*Reorganization Reserve*") from proceeds of the BP Litigation. The Reorganization Reserve is defined as:

  An amount of BP Litigation Cash Collateral to be held by Debtors and not applied to the Prepetition Debt, unless elected by Debtors, equal to fifty percent (50%) of the first BP Litigation Cash Collateral received after paying BP Litigation Contingency Costs and the tax amounts described in Paragraph 2(b)(iii), up to a maximum aggregate amount of $1,000,000.

  - **Objection:** The proposed split of litigation proceeds cannot possibly meet a reasonableness standard, as it proposes to use the BP Litigation proceeds to pay the personal tax liabilities of the Debtors' shareholders (which pay all tax obligations of the Debtors since they have made such an election under subchapter S of chapter 1 of the Internal Revenue Code) before paying the Debtors' chapter 11 administrative claims and pre-petition claims of general unsecured creditors. Such a distribution of funds converts estate assets otherwise available to unsecured creditors for the sole and exclusive benefit of shareholders. Additionally, while $1 million may be sufficient to pay holders of general unsecured claims in full, the Debtor is free to spend such funds for unpaid administrative claims not covered under any Budget or future operations. To be sure, the proposed

Reorganization Reserve does not guarantee unsecured creditors one cent in these cases.

### III. The Proposed Order Provides Inequitable Carveout Terms

- **Proposed Term:** Although the Proposed Order is labeled a "final order," the proposed budget (the "*Budget*") covers only a six week period that provides over $100,000 each for both the Debtors' counsel and financial advisors, but provides nothing beyond an initial $25,000 for the Committee's professionals.

  - **Objection:** There is no basis for the large disparity between the amounts allotted for the Committee and Debtors professional, and even if the Budget were revised to include an appropriate carveout for the Committee's professionals, such carveout would not be acceptable unless it is guaranteed for the entirety of the chapter 11 cases. Otherwise, the Committee would be deprived of sufficient funding beyond the six week period, while the Debtors would likely seek to pay their professionals from ongoing operations but refuse to do the same for the Committee's professionals. As set forth in more detail in the First Supplement, this is an impermissible violation of the priority scheme established under the Bankruptcy Code, and could lead to possible disgorgement efforts in the event of administrative insolvency.

### IV. BP Litigation Reporting to the Committee

- **Proposed Term:** Paragraph 5(d) pertains to the reporting of financial information, but fails to provide for any such reporting to the Committee.

  - **Objection:** The Committee should be included in any dissemination of financial information relating to the Debtors' operations. Additionally, if

6

> BMO and the Debtors are proposing a compromise that involves a sharing in proceeds from the BP Litigation, all settlement offers and information exchange with respect to that litigation must also be shared with the Committee.

**V. The Proposed Order Provides Overly Broad Protections and Rights to the Debtors.**

- **Proposed Term:** The Debtors' principal has proposed adding language that would require the Committee to abstain from taking any action against the Debtors' Insiders until January 1, 2012. *See* October 21, 2011 E-mail correspondence from Steven B. Chaiken, attached hereto as Exhibit B. This proposal includes a waiver against the Committee's right to bring any claims, causes of action or examinations against the Debtors' Insiders.

    o **Objection:** The Committee submits that this term or any similar abstention by the Committee is inappropriate under the circumstances. Without a global agreement on the Committee's objections to the Proposed Order, neither the Debtors nor BMO have offered valid consideration for these waivers, and the Committee has not provided its consent. Thus, the Committee submits that this provision is wholly improper.

7

**CONCLUSION**

For the foregoing reasons, the Committee submits that the Proposed Order cannot be entered unless and until the Committee's objections are addressed.

Dated: October 23, 2011

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF RWJ MANAGEMENT CO., INC.,** *et al.*

By: /s/ Aaron L. Hammer
 One of Its Attorneys

Aaron L. Hammer, Esq.
Richard S. Lauter, Esq.
Devon J. Eggert, Esq.
FREEBORN & PETERS LLP
311 South Wacker Drive, Ste. 3000
Chicago, Illinois 60606-6677
Telephone: 312.360.6000
Facsimile: 312.360.6995