UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| RWJ MANAGEMENT CO. INC., et al.,[1] | ) | Case No. 11 B 34845 |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Hon. Eugene R. Wedoff |

**FINAL ORDER AUTHORIZING DEBTOR TO: (A) USE CASH COLLATERAL; AND (B) GRANT CERTAIN LIENS AND PROVIDE SECURITY AND OTHER RELIEF TO BMO HARRIS BANK N.A.**

This matter came before this Court on the motion ("Motion") of RWJ Management Co. Inc. and its debtor affiliates (collectively, "Debtors"), requesting that this Court enter an emergency order authorizing Debtors to: (a) use cash collateral on an emergency and final basis; and (b) grant adequate protection and other relief to BMO Harris Bank N.A., a national banking association ("Lender"). Unless otherwise indicated, all capitalized terms used as defined terms herein have the meanings ascribed thereto in Exhibit A attached hereto and by this reference made a part hereof.

This Order shall constitute findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and shall take effect and be fully enforceable as of the Filing Date.

Having examined the Motion, being fully advised of the relevant facts and circumstances surrounding the Motion and having completed a hearing pursuant to Code § 363 and Fed. R. Bankr. P. 4001(b), and objections, if any, having been withdrawn or resolved or overruled by the Court, **THE MOTION IS GRANTED, AND THE COURT HEREBY FINDS THAT:**

A. On the Filing Date, Debtors filed voluntary petitions for relief under chapter 11 of the Code. As of the date hereof, Debtors retain possession of their property and continue to operate their businesses as debtors in possession pursuant to Code §§ 1107 and 1108.

---

[1] The Debtors in these jointly administered chapter 11 cases are: RWJ Crestwood, LLC, RWJ Downers Grove, LLC, RWJ Elmhurst, LLC, RWJ Forestview, LLC, RWJ Glen Ellyn, LLC, RWJ Management Co., Inc., RWJ Management Co. II, Inc., RWJ Munster, LLC, RWJ Plainfield, LLC, RWJ Romeoville, LLC, RWJ Wauconda, LLC, and RWJ Yorkville, LLC.

B. The Court has jurisdiction over the Cases and this proceeding pursuant to 28 U.S.C. § 1334. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue over the Motion is proper under 28 U.S.C. § 1409(a).

C. Debtors have stipulated to the Court that: (1) the Prepetition Documents evidence and govern the Prepetition Debt, the Prepetition Liens and the prepetition financing relationship between Debtors and Lender, and are valid and enforceable by Lender against Debtors in accordance with their terms; (2) as of the Filing Date, Debtors are liable for payment of the Prepetition Debt, and the Prepetition Debt shall be an allowed claim against each Debtor, in a principal amount not less than $21,680,000, exclusive of accrued and accruing interest, fees, costs, expenses, and Allowable 506(b) Amounts, but inclusive of amounts owed by Debtors under interest rate swap agreements with Lender; (3) the Prepetition Debt constitutes the legal, valid and binding obligation of Debtors, enforceable in accordance with the terms of the Prepetition Documents; (4) no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance or subordination pursuant to the Code or applicable nonbankruptcy law; (5) the Prepetition Liens, among other things, secure payment of all of the Prepetition Debt; and (6) the Prepetition Liens are First Priority Liens, subject only to Permitted Liens.

D. The Committee was appointed in the Cases on September 7, 2011.

E. An immediate need exists for Debtors to use Cash Collateral in order to maximize the value of Debtors' assets under the circumstances.

F. Under the circumstances, the terms and conditions of this Order are a fair and reasonable response to Debtors' request to use Cash Collateral, and the entry of this Order is in the best interests of Debtors' estates and their creditors.

G. The notice provided by Debtors of the Motion, the hearing on the Motion, and the entry of this Order satisfy the requirements of Fed. R. Bankr. P. 2002, 4001(b) and 9014 and Code §§ 102(1) and 363 and were otherwise sufficient and appropriate under the circumstances.

H. Subject to the terms and conditions set forth in this Order, Lender is willing to consent to Debtors' use of Cash Collateral through the Termination Date. Nothing contained in this Order, however, shall or shall be construed to, waive, impair, limit or prejudice in any way: (i) Lender's right to contest or object to any further or other use of its Cash

Collateral by Debtors; or (ii) Debtors' rights to seek authority for the use of additional Cash Collateral for any reason in these Cases after the Termination Date.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. <u>Authorization to Use Cash Collateral</u>. Debtors are authorized to use Cash Collateral solely: (a) in accordance with and pursuant to the terms and provisions of this Order; (b) to the extent required to pay those expenses enumerated on the Budget (subject to the Budget Performance Covenants), without any prepayments or deposits other than as consistent with Debtors' payment practices as of the date of this Order (unless done with Lender's written consent); and (c) to pay the Carveout.

2. <u>Procedure for Use of Cash Collateral.</u>

    (a) <u>Payments to Lender</u>. Subject to Paragraph 2(b) below, Debtors are authorized and directed to promptly remit to Lender: (i) on or before Thursday, October 27, 2011, $150,000 of Cash Collateral, provided that the Termination Date has not occurred prior thereto; (ii) in addition and without duplication of the foregoing, all BP Litigation Cash Collateral coming into Debtors' possession or control at any time, except to the extent any order of the Court approving a settlement of the BP Litigation provides otherwise with respect to amounts owed to BP Litigation Professionals from such BP Litigation Cash Collateral, and except with respect to the Reorganization Reserves, and (iii) as and when received, all other Cash Collateral coming into Debtors' possession or control in excess of the projected "Ending Cash" for such week in the Budget, other than excess earnings from ordinary operations. Subject to Paragraph 2(b) below, all such Cash Collateral received by Lender shall be applied pursuant to and in accordance with the terms of Paragraph 5(d) herein.

    (b) <u>Consent to/Remittance of Amounts for the Carveout, the BP Litigation Contingency Costs, and Reorganization Reserves</u>.

        (i) Lender consents to the use of Cash Collateral for the applicable Carveout Professional for Debtors' account if and to the extent amounts of the Carveout are due and payable by Debtors in accordance with Paragraph 3 below.

        (ii) Lender shall remit amounts solely from BP Litigation Cash Collateral received by Lender in accordance with Paragraph 2(a)(ii) to the applicable BP Litigation Professional for Debtors' account for BP Litigation Contingency Costs owed, if and to the extent such amounts have been allowed on a final basis and ordered to be paid by the Court and not otherwise provided for in any order of the Court approving a settlement of the BP Litigation Claims.

(iii)    Lender shall remit amounts solely from BP Litigation Cash Collateral received by Lender in accordance with Paragraph 2(a)(ii) to Debtors to pay any applicable postpetition federal and state income taxes owed by Debtors, if and to the extent such tax amounts have been allowed on a final basis and ordered to be paid by the Court, or Guarantor, if and to the extent such tax amounts are due and payable by Guarantor on account of the subchapter S corporate status of a Debtor, on account or as a result of such judgment or settlement, reduced by (A) any available net operating loss carry-forwards and (B) any tax benefits received by Guarantor on account of his ownership interests in the Debtors in 2011 and any subsequent year through and including receipt of such BP Litigation Cash Collateral.

(iv)    Lender consents to the establishment of the Reorganization Reserves from BP Litigation Cash Collateral (whether received prior to or after the Termination Date) and further stipulates that, notwithstanding anything to the contrary in this Order, none of the liens and claims granted to it pursuant to this Order or under applicable law shall impact or impair the rights of the Debtors or Committee with respect to such funds.

(c)    <u>Occurrence of Termination Date</u>.    Upon the Termination Date, without further notice or order of Court, Debtors' authorization to use Cash Collateral under Paragraph 1 of this Order shall automatically terminate, but the obligations and relief set forth in Paragraphs (2)(a) and (b) shall continue and remain in full force and effect from and after the Termination Date.

(d)    <u>Rights Upon Termination</u>.    On the Termination Date, Lender and Debtors shall be entitled to apply to this Court for all appropriate relief, upon such notice as may be appropriate under the circumstances; provided, however, that: (1) the obligations of Debtors and the rights of Lender with respect to all transactions which have occurred prior to the Termination Date shall remain unimpaired and unaffected; and (2) Lender and Debtors shall retain all of their respective rights and remedies under the Code, including, without limitation, Debtors' right to request the continued use of Cash Collateral and Lender's right to oppose the Debtors' further use of Cash Collateral and to move for relief from the automatic stay.

3.    <u>Carveout Terms</u>.    (a) The Carveout shall consist of the lesser of (i) the aggregate weekly line item amounts as provided in the Budget, and (ii) the aggregate amount of the Carveout accrued prior to the Termination Date, (b) the Carveout shall be reduced on a dollar-for-dollar basis by any payments of fees or expenses of the Carveout Professionals, including, without limitation, such payments from retainers, (c) all prepetition retainers and any other property of the estate (other than property subject to an unavoidable lien in favor of Lender) shall be used to pay any allowed fees and expenses of the Carveout Professionals before any payments of such fees or expenses are made from the Prepetition Debt or the Aggregate Collateral, (d) Lender shall have no

obligation to fund any fees or expenses of the Carveout Professionals incurred on or after the Termination Date, and such fees and expenses shall not be included in the Carveout, except that the Carveout for the Committee professionals (in addition to the $130,000 set forth in the current Budget) shall be deemed increased by: (i) $150,000 in the aggregate to pay, first, any accrued but unpaid fees and expenses of the Committee professionals during these Cases, and to the extent of any remaining funds, second, to General Unsecured Claims on a pro rata basis in accordance with future Court order, if and solely if Lender consents to a sale of substantially all of the Aggregate Collateral or proposes or votes in favor of a confirmed plan in these Cases; and (ii) by $500,000 in the aggregate from any full or partial settlement or compromise of the BP Litigation Claims to which Lender consents, under which Debtors' sell substantially all Aggregate Collateral not consisting of BP Litigation Claims, to be used for the purpose of satisfying, first any allowed claims pursuant to Code § 503(b)(9) and, to the extent of any remaining funds, second, General Unsecured Claims in accordance with further order of Court; and (e) the Carveout shall not include, and no Prepetition Debt or Aggregate Collateral may be used to pay, any fees or expenses incurred by any entity in connection with claims, actions or services adverse to Lender or its interests in the Aggregate Collateral, including, without limitation (i) preventing, hindering or delaying Lender's enforcement of its rights, interests, and remedies after the occurrence of an Event of Default, (ii) using or seeking to use Cash Collateral or selling any Aggregate Collateral without Lender's consent, (iii) incurring indebtedness without Lender's consent, or (iv) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority or enforceability of the Prepetition Debt or the Prepetition Liens, or any other rights or interests of Lender or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code, against Lenders; provided, however, that up to $25,000 may be used by counsel for any Committee to investigate the validity, extent, amount, perfection, priority, or enforceability of the Prepetition Liens. Nothing herein shall be construed as consent to the allowance of any fees or expenses of the Carveout Professionals or shall affect the right of Lender to object to the allowance and payment of such fees, costs or expenses.

    4. <u>Adequate Protection of Interests of Lender in the Aggregate Collateral</u>. As adequate protection of Lender's interests in the Aggregate Collateral for the period from the Filing Date through the Termination Date (including, without limitation, for any Collateral Diminution from and after the Filing Date):

(a) <u>Priority of Prepetition Liens/Allowance of Lender's Claim</u>. (1) The Prepetition Liens shall constitute First Priority Liens, subject only to the Permitted Liens; (2) the Prepetition Debt constitutes the legal, valid and binding obligation of Debtor, enforceable in accordance with the terms of the Prepetition Documents; (3) no offsets, defenses or counterclaims to the Prepetition Debt exist, and no portion of the Prepetition Debt is subject to avoidance, recharacterization or subordination pursuant to the Code or applicable non-bankruptcy law; and (4) Lender's claim with respect to the Prepetition Debt shall for all purposes constitute an allowed secured claim within the meaning of Code § 506 in an amount not less than $21,680,000, exclusive of accrued and accruing Allowable 506(b) Amounts, but inclusive of amounts owed by Debtors under interest rate swap agreements with Lender.

(b) <u>Replacement Liens</u>. Lender is hereby granted the Replacement Liens to the extent of any Collateral Diminution from and after the Filing Date. The Replacement Liens: (1) are and shall be in addition to the Prepetition Liens; (2) are and shall be First Priority Liens (subject only to any Permitted Liens and the Prepetition Liens) that are properly perfected, valid, and enforceable without any further action by Debtors or Lender and without the execution, filing or recordation of any financing statements, security agreements, mortgages or other documents or instruments; and (3) shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the Case.

(c) <u>Allowed Code § 507(b) Claim</u>. If and to the extent the adequate protection of the interests of Lender in the Aggregate Collateral granted to Lender pursuant to this Order proves insufficient, Lender shall have an allowed claim under Code § 507(b) in the amount of any such insufficiency, with priority over: (1) all costs and expenses of administration of the Cases that are incurred under any provision of the Code (other than the Carveout), including, without limitation, Code §§ 503(b), 506(c), 507(a), or 552(b); and (2) the claims of any other party in interest under Code § 507(b).

(d) <u>Application of Cash Collateral</u>. Lender is authorized to apply all Cash Collateral now or hereafter coming into Lender's possession or control as follows: (1) first, to payment of the principal amount of the Prepetition Debt; and (2) second, to payment of Prepetition Debt consisting of Allowable 506(b) Amounts. All such applications shall be final and indefeasible, unless otherwise agreed in writing by Lender.

(e) <u>No Surcharge</u>. In the exercise of its business judgment, with respect to expenses or other liabilities incurred by Debtors from the Filing Date through the Termination Date, Debtor hereby agrees that there shall be no surcharge of the Prepetition Collateral for any purpose, unless agreed to by Lender. Further, Debtors believes and asserts that the Budget contains all expenses that are reasonable and necessary for the operation of its business and the preservation of the Aggregate Collateral from the Filing Date through the Termination Date and, therefore, includes all items potentially chargeable to Lender under Code § 506(c) for such period. Accordingly, Debtors (and any subsequently appointed Trustee) shall be deemed to have waived any rights, benefits or causes of action under Code § 506(c), the enhancement of collateral provisions of Code § 552, or any other legal or equitable doctrine (including, without limitation, unjust enrichment) as they may relate to or be asserted against Lender or the Aggregate Collateral on account of expenses or other liabilities incurred by Debtors through the Termination Date. In reliance on the foregoing, Lender has agreed to the entry of this Order.

(f) <u>Waiver of Right to Return/Consent to Setoff</u>. Debtors shall not (a) return any of the Aggregate Collateral pursuant to Code § 546(h) or otherwise, or (b) consent to a setoff against or with respect to the Aggregate Collateral without the prior written consent of Lender.

(g) <u>Guarantees</u>. The Guarantees and all related documents shall remain in full force and effect notwithstanding the entry of this Order and any subsequent orders amending this Order or otherwise providing for the use of Cash Collateral consented to by Lender pursuant to Code § 363. Guarantor is and shall remain liable for the guaranteed obligations under the Guarantees, including, without limitation, all amounts secured by Replacement Liens.

(h) <u>Prohibition Against Other Use of Cash Collateral and Incurrence of Postpetition Debt</u>. Prior to the Termination Date, Debtor will not be permitted to use or seek to use Cash Collateral except as permitted hereby, and will not be permitted to incur or seek to incur debt secured by a lien which is equal to or superior to the Prepetition Liens or Replacement Liens or which is given superpriority administrative expense status under Code § 364(c)(1), unless, in addition to the satisfaction of all requirements of Code §§ 363 or 364: (i) Lender has consented to the same; (ii) at the time of the entry of an order approving the same, the Prepetition Debt has been fully and finally repaid in cash; or (iii) such Cash Collateral or proceeds of postpetition debt are first used to immediately repay the Prepetition Debt fully and finally in cash.

(i) <u>Limitation of Certain Plan Rights</u>. In consideration of Lender's consent to the entry of this Order, unless otherwise agreed by Lender in advance in writing, Debtors (and their respective affiliates, insiders, and relatives of insiders), Guarantor and the Committee shall be deemed to have waived their respective rights to file or otherwise support a plan (or related disclosure statement) in the Cases that does not provide for full and final payment in cash of the Prepetition Debt on the effective date thereof. If Lender assigns any or all of the Prepetition Debt to any party other than an affiliate of Lender the foregoing waiver shall be deemed null and void. If Debtors repay in cash not less than $7,500,000 of the Prepetition Debt on or before January 31, 2012, and the Collateral Value determined as of the receipt of such payment (A) remains unchanged as a result thereof and (B) remains greater than Collateral Value determined as of November 30, 2011 <u>minus</u> $100,000, then the foregoing waiver shall be deemed null and void but Debtors (and their respective affiliates, insiders and relatives of insiders) shall be deemed to have waived their respective rights to file or otherwise support a plan (or related disclosure statement) in the Cases that does not provide for full and final payment in cash of the Prepetition Debt not later than two (2) years after the effective date thereof, and in the case such a plan is proposed by Debtors, Debtors shall be deemed to have consented to Lender proposing a competing plan.

5. <u>Miscellaneous Provisions.</u>

(a) <u>General Reservation</u>. Nothing contained in this Order shall be deemed to (i) waive, limit, or impair in any way any of Debtors' respective rights, claims, actions or interests against BP Products North America, Inc., and/or NRC Realty & Capital Advisors, LLC or otherwise asserted by Debtors among the BP Litigation Claims; (ii) waive Debtors' right to move for a sale (whether pursuant to Code. § 363 or otherwise) of the Prepetition Collateral; or (iii) except as expressly provided in Paragraph 4(i) herein, waive Debtors' right to file or confirm a chapter 11 plan containing such terms or conditions as may be determined by Debtors in their respective sole and absolute discretion.

(b) <u>Force and Effect of Prepetition Documents</u>. To the extent there exists any conflict among the Motion, the Prepetition Documents and the terms of this Order, this Order shall govern and control. Except as modified herein and subject to the other provisions of this Order and the Code, the Prepetition Documents (including, without limitation, the reimbursement and indemnification provisions thereof) shall remain in full force and effect after entry of this Order.

(c) <u>Certain Insider Related Matters</u>.

(i) <u>Subordination Agreements</u>. The Subordination Agreements constitute subordination agreements within the meaning of Code § 510(a). Notwithstanding the commencement of the Cases, the terms of or Lender's consent to the entry of this Order, the Subordination Agreements are and shall remain in full force and effect in accordance with their terms.

(ii) <u>Limited Committee Standstill</u>. No claims or actions, including but not limited to conducting any examinations of the "Waiving Parties" (as defined in Definition 17 herein) under Federal Rule of Bankruptcy Procedure 2004, may be initiated against any of the Waiving Parties by the Committee until January 1, 2012.

(d) <u>Financial Information</u>. Debtors are hereby directed to deliver to Lender and the Committee such financial and other information concerning the business and affairs of Debtors (including, without limitation, non-confidential information regarding the BP Litigation Claims) and, to the extent agreed to by the Debtors or ordered by Court, any of the Aggregate Collateral as may be required pursuant to the Prepetition Documents and as Lender or the Committee shall reasonably request from time to time. Debtors are also directed to allow Lender and its respective representatives reasonable access to their premises for the purpose of enabling Lender to inspect and audit the Collateral and Debtors' books and records. Such access for such purpose shall be permitted during normal business hours. Debtors are further directed to deliver to Lender and the Committee evidence, satisfactory to Lender and the Committee, that the Aggregate Collateral is insured for the full replacement value thereof, that all insurance policies required by the Prepetition Documents or obtained in connection with the Aggregate Collateral are maintained in full force and effect, and that Lender is named as loss payee on all such property insurance policies and named as additional insured on all such liability policies as its interests may appear.

(e) <u>No Waiver</u>. Lender shall not be deemed to have suspended or waived any of its rights or remedies under this Order, the Prepetition Documents, the Code, and applicable nonbankruptcy law unless such suspension or waiver is in writing, signed by a duly authorized officer of Lender and directed to Debtors. No failure of Lender to require strict performance by Debtors (or by any Trustee) of any provision of this Order shall waive, affect or diminish any right of Lender thereafter to demand strict compliance and performance therewith, and no delay on the part of Lender in the exercise of any right or remedy under this Order, the Prepetition Documents, the Code, or applicable nonbankruptcy law shall preclude the exercise of any right or remedy. Further, this Order shall not constitute a waiver by Lender of any of its rights under the Prepetition Documents, the Code or applicable nonbankruptcy law, including, without limitation its right to

later assert: (1) that, any of its interests in the Prepetition Collateral lack adequate protection within the meaning of Code §§ 361, 362(d) or 363(e) or any other provision thereof; or (2) a claim under Code § 507(b).

(f) <u>Responsible Person</u>. By consenting to the entry of this Order, Lender shall not: (1) be deemed to be in control of the operations or liquidation of Debtors; or (2) be deemed to be acting as a "responsible person" with respect to the operation, management or liquidation of Debtors.

(g) <u>No Marshaling</u>. Neither Lender nor any of the Aggregate Collateral shall be subject to the doctrine of marshaling.

(h) <u>Right to Credit Bid</u>. Pursuant to Code § 363(k), Lender shall have the right to use the Prepetition Debt to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Aggregate Collateral, whether or not such sale is proposed under or in connection with a plan.

(i) <u>Post-Termination Date Collateral Value Stipulation</u>. If no Event of Default occurs on or prior to November 30, 2011, Lender and Debtors shall be deemed to have stipulated that, solely for purposes of determining adequate protection in connection with any Cash Collateral use that might be proposed by Debtor without Lender's consent on and after December 1, 2011: (A) the value of the Prepetition Collateral as of the commencement of these Cases shall be deemed to be the lesser of the Collateral Value as of: (i) 11:59 P.M. on November 30, 2011, minus $100,000, or (ii) the Filing Date minus $100,000; and (B) the value of the Prepetition Collateral on December 1, 2011 and any given date thereafter shall be deemed to be the Collateral Value of 11:59 P.M. on such date. For avoidance of doubt, the foregoing stipulation solely relates to determining future values of the Prepetition Collateral for adequate protection purposes in connection with Cash Collateral use, and it shall not in any way modify, prejudice, release, or waive any of Lender's rights, claims, and interests for, in, or against the Aggregate Collateral or the Prepetition Debt, or any of Lender's other objections to any such nonconsensual Cash Collateral use.

6. <u>Binding Effect.</u>

(a) <u>Order</u>. This Order (including, without limitation, the stipulations and findings contained in Paragraphs C of this Order) shall be binding on all parties in interest in the Cases and their respective successors and assigns, including, without limitation, any Trustee,

except that any Trustee shall have the right to terminate this Order after notice and a hearing. If this Order does not become a final nonappealable order, if a Trustee terminates this Order, or if any of the provisions of this Order are hereafter modified, amended, vacated or stayed by subsequent order of this Court or any other court, such termination or subsequent order shall not affect: (a) the stipulations, representations, and findings contained in this Order and the relief granted by and the releases contained in this Order; and (b) the priority, validity, enforceability or effectiveness of any lien, security interest or other benefit or claim authorized hereby prior to the effective date of such termination or subsequent order. All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Order, and Lender shall be entitled to all the rights, remedies, privileges and benefits granted hereto, including the liens and priorities granted herein. Except as otherwise explicitly set forth in this Order, no third party is intended to be, or shall be deemed to be, a third party beneficiary of this Order.

(b) <u>Survival</u>. The provisions of this Order, and any actions taken pursuant to or in reliance upon the terms hereof, shall survive entry of, and govern in the event of any conflict with, any order which may be entered in the Cases: (a) confirming any chapter 11 plan, (b) converting any Case to a case under chapter 7 of the Code, (c) dismissing any Case, (d) withdrawing of the reference of any Case from this Court, or (e) providing for abstention from handling or retaining of jurisdiction of any of the Case in this Court.

7. <u>Notice of Further Hearing</u>. Further hearing on the Motion is scheduled for November 22, 2011 at 10:00, and may be continued from time to time without further notice other than that given in open court. Debtors are directed to immediately serve a copy of this Order by first class mail, postage prepaid, on counsel for Lender, Debtors' other secured creditors, any Committee, counsel for the Committee, Debtors' twenty (20) largest unsecured creditors, the United States Trustee, and all other parties that have requested notice in the Cases, which service shall constitute adequate and proper notice thereof. Any objection to further relief being granted on the Motion must be, no later than forty-eight (48) hours prior to the commencement of such hearing, filed with the Court and received by counsel for Debtors, Lender, and the United States Trustee. Any timely and properly filed and served objection will be heard at the hearing.

-12-

Dated: 10/25/11

_____
Hon. Eugene R. Wedoff
United States Bankruptcy Judge

# EXHIBIT A

## DEFINED TERMS AND RULES OF CONSTRUCTION

### *Defined Terms*

1. ***Aggregate Collateral.*** Collectively, the Prepetition Collateral and the Replacement Collateral.

2. ***Allowable 506(b) Amounts.*** All to the extent allowable under Code § 506(b), interest at the rates set forth in the Prepetition Documents, and all fees, costs, expenses, and other charges due or coming due under the Prepetition Documents or in connection with the Prepetition Debt (regardless of whether such fees, costs, interest and other charges are included in the Budget) to the extent including, without limitation, all out-of-pocket filing and recording fees, attorneys' and paralegals' fees and expenses, financial advisor fees and expenses, external and internal audit fees and expenses, closing fees, unused facility fees, letter of credit fees, and all other costs, expenses, and amounts incurred by Lender in connection with the Cases.

3. ***BP Litigation Claims.*** Collectively, any and all claims or causes alleged or which may ever be alleged by or on behalf of any Debtor, Guarantor, or RWJ Enterprises, Inc. in that certain Case No. 2010-L-007891 in the Circuit Court of Cook County, Illinois, together with all appeals, ancillary, enforcement, and other related cases or proceedings in such court or other courts from time to time.

4. ***BP Litigation Cash Collateral.*** Collectively, all Cash Collateral and any other cash proceeds or other consideration arising or generated from any full or partial disposition of the BP Litigation Claims (whether by settlement, judgment or otherwise), other than consideration arising from any such settlement under which Debtors' sell Aggregate Collateral not consisting of BP Litigation Claims.

5. ***BP Litigation Contingency Costs.*** Collectively, such amounts owed to the BP Litigation Professionals for fees and expenses not in the Budget on account of certain achievements, outcomes, or other events in the BP Litigation, as set forth in the engagement agreements of the BP Litigation Professionals with Debtors and to the extent approved by order of the Court.

6. ***BP Litigation Professionals.*** Collectively, counsel for Debtors in the BP Litigation, Carmen D. Caruso, P.C. and The Coleman Law Firm, if retained and engaged by Debtors as special counsel with Court approval.

7. ***Budget.*** The budget attached to this Order as <u>Exhibit B</u>, as amended, modified or supplemented from time to time, for different amounts or different periods, all as may be agreed to by Lender and Debtors from time to time without further Court approval, but with not less than twenty-four (24) hours prior written notice to the Committee, except with respect to any Carveout which shall not be amended or otherwise modified without Committee consent.

8.  ***Budget Performance Covenants.*** (a) Debtors, on a consolidated basis, shall report their Collateral Value as of October 20, 2011 to Lender before noon on October 25, 2011 ("Starting Collateral Value"). (b) On Tuesday, November 1, 2011 and each Tuesday thereafter, Debtors, on a consolidated basis, shall report the Collateral Value as of the end of business on the immediately prior Thursday, and each such Collateral Value shall not be less than the Starting Collateral Value minus $100,000. (c) First measured as of November 11, 2011, and each subsequent Friday, Debtors shall at all times maintain a minimum aggregate amount of cash in their bank accounts of $350,000 and shall provide the Lender with account summary information evidencing account balances.

9.  ***Carveout.*** For the purposes of enabling Debtors' estate to pay allowed fees and disbursements of the Carveout Professionals as may be awarded from time to time pursuant to Code § 330, the aggregate amount set forth in Paragraph 3 of this Order; provided, however, that the Carveout may be used only subject to the terms and provisions of Paragraph 3 of this Order.

10. ***Carveout Professionals.*** Counsel for Debtors, Adelman Gettleman Ltd., special counsel for Debtors (if retained and engaged by Debtors), the BP Litigation Professionals, financial advisor for Debtors, RSM McGladrey, Inc., counsel for the Committee, Freeborn & Peters LLP, and financial advisor for the Committee, Protiviti Inc.

11. ***Cases.*** The chapter 11 cases or any superseding chapter 7 cases of Debtors.

12. ***Cash Collateral.*** All "cash collateral," as that term is defined in Code § 363(a) in which Lender has an interest, all deposits subject to setoff rights in favor of Lender, and any and all other cash arising from the collection or other conversion to cash of the Aggregate Collateral, including, without limitation, from the sale of inventory and the collection of accounts receivable and any BP Litigation Cash Collateral (other than the Reorganization Reserves). To the extent any such cash collected or received is not clearly identifiable as attributable to Prepetition Collateral, Replacement Collateral, or the Reorganization Reserves, such cash shall be deemed to be proceeds of Prepetition Collateral.

13. ***Code.*** The United States Bankruptcy Code (11 U.S.C. § 101 *et seq.*), as amended, and any successor statute. Unless otherwise indicated, all statutory section references in this Order are to the Code.

14. ***Collateral Diminution.*** The sum of, without duplication: (a) the amount of all Cash Collateral used or otherwise consumed or disposed of by Debtors in the Cases; (b) the decline in value of the Prepetition Collateral in which Lender had an interest on the Filing Date, by reason of use, consumption, other disposition, loss or market depreciation; (c) the amount of any other diminution in the value of Lender's interests in the Prepetition Collateral since the Filing Date; (d) the amount of Allowable 506(b) Amounts accrued and unpaid from and after the Filing Date; and (e) the amount of Allowable 506(b) Amounts projected to accrue during the Case from and after the Filing Date.

15. ***Collateral Value.*** As of each date of determination, the amount equal to: (a) the sum of (i) the amount of tangible cash or cash equivalents in Debtors' possession or

control; (ii) the ending balances in Debtors' deposit and securities accounts on such day; (iii) the aggregate amount of Debtors' post-petition credit card receivables not yet remitted to Debtors or not yet used to offset inventory purchases; (iv) the aggregate amount of rebates or other sales program amounts earned but not yet received by Debtors prior to the end of such day; (v) the aggregate amount of Debtors' convenience store inventory, valued at retail, at the end of such day; and (vi) the aggregate amount of Debtors' fuel inventory, valued at retail, at the end of such day; minus (b) the sum of (i) the accrued but unpaid Carveout (other than the accrued Carveout designated for the Committee in excess of $50,000 with respect to fees and expenses incurred prior to the Termination Date, except to the extent Debtors' Carveout for its financial advisor is reduced (up to a maximum amount of $25,000); (ii) accrued claims of United States Trustee for the payment of fees under 28 U.S.C. § 1930(a) but not paid as of the end of such day, whether or not in the Budget; and (iii) all of Debtors' allowable administrative expenses or other postpetition liabilities (other than amounts allowable under Code § 503(b)(9)) but not paid or otherwise satisfied as of the end of such day, whether or not in the Budget.

16. **Committee**. Any official creditors' committee appointed to represent unsecured creditors in this Case pursuant to Code § 1102.

17. **Debtors Reorganization Reserve**. An amount of BP Litigation Cash Collateral to be held by Debtors and not applied to the Prepetition Debt, unless elected by Debtors, equal to fifty percent (50%) of the first BP Litigation Cash Collateral received after paying BP Litigation Contingency Costs and the tax amounts described in Paragraph 2(b)(iii), up to a maximum aggregate amount of $750,000. No portion of the Debtors Reorganization Reserve will be used to pay allowed prepetition claims held by any of the Debtors, the Debtors' officers, directors or shareholders, RWJ Enterprises, Inc. or The Royal Buying Group, Inc. (collectively, "Waiving Parties").

18. **Event of Default**. Any one or more of the following, at Lender's election: (a) any Debtor fails to perform any of their obligations in strict accordance with the terms of this Order (without duplication of any other default set forth in the following subsections of this Definition); (b) any Debtor, without Lender's consent, seeks other or further use of Cash Collateral on terms unacceptable to Lender; (c) Debtors, on a consolidated basis, fail to comply with the Budget Performance Covenants; (d) any Debtor, without Lender's consent, files a motion to incur debt secured by a lien with priority equal to or superior to the Prepetition Liens or the Replacement Liens or which is given superpriority administrative expense status under Code § 364(c); (e) any key management of any Debtor is removed or lost; (f) any chapter 11 plan is filed that does not propose to pay the Prepetition Debt in full in cash not later than the effective date thereof; (g) any representation or warranty made by any Debtor after the Filing Date in any certificate, report or financial statement delivered to Lender or the Committee proves to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty or statement not misleading); (h) any of the Cases are converted to a case under chapter 7 of the Code; (i) a Trustee is appointed or elected in any of the Cases, or an examiner with the power to operate any Debtor's business is appointed in the case; (j) any Debtor obtains entry of an order approving rejection of any material executory contract or lease (other than a fuel supply contract) without Lender's consent; (k) the Court sustains an objection of Lender to a motion by any Debtor to reject a fuel supply contract; (l) any material executory contract or lease of any Debtor

(other than a fuel supply contract for which the Debtors have Court approval to reject) is terminated or rescinded; or (m) if not settled or continued with Lender's consent, trial does not commence on the BP Litigation Claims on or before November 10, 2011.

19. **_Filing Date_**. August 26, 2011.

20. **_First Priority Liens_**. Liens which are first priority, properly perfected, valid and enforceable security interests, which are not subject to any claims, counterclaims, defenses, setoff, recoupment or deduction, and which are otherwise unavoidable and not subject to avoidance or subordination pursuant to any provisions of the Code, applicable nonbankruptcy law, or any agreement.

21. **_General Unsecured Claims_**. Collectively, allowed claims of creditors arising prior to the Filing Date not secured by a lien on property of the Debtors' estates and not entitled to be classified as a priority claim pursuant to section Code § 507, except for claims of the Waiving Parties, and except for any unsecured deficiency claim of Lender.

22. **_Guarantees._** Collectively, the (a) Unlimited Continuing Guaranty, dated September 17, 2007, (b) Unlimited Continuing Guaranty, dated August 28, 2008, and (c) Unlimited Continuing Guaranty, dated December 13, 2007, all executed by Guarantor in favor of Lender, together with all other guarantees executed by Guarantor in favor of Lender, and all amendments, modifications, and reaffirmations of any of the foregoing from time to time.

23. **_Guarantor_**. Mr. Robert W. Juckniess.

24. **_Permitted Liens_**. Collectively, (a) liens in favor of third parties upon the Prepetition Collateral, which third party liens, as of the Filing Date (i) had priority under applicable law over the Prepetition Liens, (ii) were not subordinated by agreement or applicable law, and (iii) were non-avoidable, valid, properly perfected and enforceable; (b) the Carveout; and (c) the claim of the United States Trustee for the payment of fees under 28 U.S.C. § 1930(a).

25. **_Prepetition Collateral_**. All properties and interests of Debtors subject to the liens and security interests of Lender as of the Filing Date, and all proceeds, rents, issues, profits and products thereof.

26. **_Prepetition Debt_**. All indebtedness or obligations under the Prepetition Documents as of the Filing Date, including, without limitation, all fees, costs, interest, and expenses, and Allowable 506(b) Amounts.

27. **_Prepetition Documents_**. Collectively, all as amended, modified, or supplemented from time to time: (a) that certain Second Master Loan Modification Agreement, dated June 30, 2010, by and among Lender, Debtors and Guarantor; (b) all "Loan Documents" defined therein; and (c) each other agreement, document, and instrument delivered under or otherwise in connection with any of the foregoing by any Debtor and, or in favor of, Lender.

28. **_Prepetition Liens_**. Lender's liens and security interests in the Prepetition Collateral.

29. ***Replacement Collateral.*** All of the real and personal property of Debtor of any description whatsoever, wherever located, and whether existing or hereafter acquired, including, without limitation, all cash, cash equivalents, bank accounts, accounts, other receivables, chattel paper, contract rights, inventory, instruments, documents, securities (whether or not marketable), equipment, fixtures, real property interests, franchise rights, patents, tradenames, copyrights, intellectual property, general intangibles, causes of action, commercial tort claims, tax refunds, actions, investment property, leases, and all proceeds, rents, issues, profits, products, substitutions and accessions, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any of the foregoing, but excluding (a) claims and proceeds under Code §§ 544, 547, 548, and 550, and (b) the Reorganization Reserves.

30. ***Replacement Liens.*** First Priority Liens granted to Lender pursuant to this Order in the Replacement Collateral and in any Prepetition Collateral not subject to the Prepetition Liens, subject only to Permitted Liens.

31. ***Reorganization Reserves.*** Collectively, the Debtors Reorganization Reserve and the Unsecured Creditors' Reorganization Reserve.

32. ***Subordination Agreements.*** Collectively, the (a) Subordination Agreement, dated December 13, 2007, to which Lender and Mr. Paul Berezny are parties, along with certain Debtors, and (b) the Subordination Agreement, dated December 18, 2009, to which Lender, Mrs. Louise Berezny, and Guarantor are parties, along with certain Debtors.

33. ***Termination Date.*** At Lender's election, the earlier to occur of: (a) the date on which Lender provides, via facsimile or overnight mail, written notice to counsel for Debtors of the occurrence of an Event of Default; and (b) November 30, 2011.

34. ***Trustee.*** Any trustee appointed or elected in the Cases.

35. ***Unsecured Creditors' Reorganization Reserve.*** An amount of BP Litigation Cash Collateral to be held in a segregated escrow by Debtors and not applied to the Prepetition Debt, equal to fifty percent (50%) of the first BP Litigation Cash Collateral received after paying BP Litigation Contingency Costs, funding the Debtors Reorganization Reserve and the tax amounts described in Paragraph 2(b)(iii), up to a maximum aggregate amount of $750,000, specifically earmarked for payment, first, to allowed unpaid fees and expenses of the Committee's professionals to the extent unpaid from Debtors Reorganization Reserve and, second, to allowed General Unsecured Claims as agreed between the Debtors and the Committee or in accordance with future Court order.

## EXHIBIT B

## Budget

| 10/21 thru 12/1 | Budget 10/21 through 10/27 | Budget 10/28 through 11/3 | Budget 11/4 through 11/10 | Budget 11/11 through 11/17 | Budget 11/18 through 11/24 | Budget 11/25 through 12/1 | Budget 6 Week Total |
|---|---|---|---|---|---|---|---|
| Beginning Cash on 8/26/2011, date of filing | $ 637,313 | | | | | | |
| Projected Beginning Cash, Baytree | $ 1,473,487 | $ 958,064 | $ 895,981 | $ 773,107 | $ 762,024 | $ 630,941 | $ 1,473,487 |
| Total Cash Receipts | $ 615,000 | $ 615,000 | $ 615,000 | $ 615,000 | $ 615,000 | $ 615,000 | $ 3,690,000 |
| ACH Credits | $ 30,000 | $ 30,000 | $ 30,000 | $ 30,000 | $ 30,000 | $ 30,000 | $ 180,000 |
| Rebates/Coupons | | | | | | | |
| **Operating Disbursements** | | | | | | | |
| Accounting | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Audit | $ 2,000 | $ - | $ - | $ - | $ - | $ - | $ 2,000 |
| Auto Expense | $ 2,900 | $ 2,900 | $ 2,900 | $ 2,900 | $ 2,900 | $ 2,900 | $ 17,400 |
| BP AMPM Advertising and Royalties [1] | $ - | $ 50,000 | $ - | $ - | $ 50,000 | $ - | $ 100,000 |
| Bank Fees | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 500 | $ 3,000 |
| Financial Consulting | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| CoreMark BP AMPM Required Food | $ 23,000 | $ 23,000 | $ 23,000 | $ 23,000 | $ 23,000 | $ 23,000 | $ 138,000 |
| Cost of Goods for Retail Sales | $ 45,000 | $ 45,000 | $ 45,000 | $ 45,000 | $ 45,000 | $ 45,000 | $ 270,000 |
| Fintech Beer and Wine Prepetition | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Fintech Beer and Wine Postpetition | $ 23,000 | $ 23,000 | $ 22,000 | $ 22,000 | $ 22,000 | $ 22,000 | $ 134,000 |
| Gift Cards | $ 5,000 | $ 5,000 | $ 4,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 29,000 |
| Guarda Armored Car Prepetition | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Guarda Armored Car Postpetition | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 6,000 |
| Insider Health Insurance | $ - | $ - | $ 1,650 | $ - | $ - | $ - | $ 1,650 |
| Insider Gross Payroll | $ 94,500 | $ 13,500 | $ 13,500 | $ 13,500 | $ 13,500 | $ 13,500 | $ 162,000 |
| Insurance | $ 5,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ - | $ - | $ 35,000 |
| Non Legal Litigation | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Legal/Professional | $ 90,000 | $ - | $ - | $ - | $ - | $ - | $ 90,000 |
| License/Permits | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 1,000 | $ 6,000 |
| Jobber Net Fuel | $ 225,000 | $ 225,000 | $ 225,000 | $ 225,000 | $ 225,000 | $ 225,000 | $ 1,350,000 |
| Lottery Postpetition | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 25,000 | $ 150,000 |
| Lottery Winning Payouts | $ 26,000 | $ 26,000 | $ 26,000 | $ 26,000 | $ 26,000 | $ 26,000 | $ 156,000 |
| *Lottery pre petition* | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Postage/Office Supplies | $ 1,850 | $ 1,850 | $ 1,850 | $ 1,850 | $ 1,850 | $ 1,850 | $ 11,100 |
| Assumption of Contract Costs | $ - | $ - | $ - | $ - | $ - | $ 170,000 | $ 170,000 |
| Rent Expense | $ - | $ - | $ 35,341 | $ - | $ - | $ 35,341 | $ 70,681 |
| Repairs and Maintenance | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 10,000 | $ 60,000 |
| Sales Taxes Prepetition | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Sales Taxes Postpetiton | $ 45,000 | $ 45,000 | $ 45,000 | $ 45,000 | $ 65,000 | $ 45,000 | $ 290,000 |
| SAS BP Approved Grocery and Tobacco | $ 120,000 | $ 120,000 | $ 120,000 | $ 120,000 | $ 120,000 | $ 120,000 | $ 720,000 |
| Store Operating Expense | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 5,000 | $ 30,000 |
| Total Gross Payroll Prepetition | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| Total Gross Payroll Postpetition | $ 48,000 | $ 48,000 | $ 48,000 | $ 48,000 | $ 48,000 | $ 48,000 | $ 288,000 |
| Trash Pickup | $ - | $ - | $ 5,800 | $ - | $ - | $ - | $ 5,800 |
| Utilities plus Deposits | $ 29,338 | $ 11,000 | $ 11,000 | $ 11,000 | $ 11,000 | $ 11,000 | $ 84,338 |
| Trustee Fees | $ 4,000 | $ - | $ - | $ - | $ - | $ - | $ 4,000 |
| Reserve for Real Estate Taxes - Debtor Owned Properties [2] | $ 58,000 | $ - | $ - | $ - | $ - | $ 29,000 | $ 87,000 |
| CATCH ALL EXPENSES | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 | $ 2,000 | $ 12,000 |
| **Total Expenses** | $ 892,088 | $ 693,750 | $ 684,541 | $ 642,750 | $ 702,750 | $ 867,091 | $ 4,482,969 |
| EBITDA | $ (247,088) | $ (48,750) | $ (39,541) | $ 2,250 | $ (57,750) | $ (222,091) | $ (612,969) |
| Ending Cash [3] | $ 1,226,399 | $ 909,314 | $ 856,440 | $ 775,357 | $ 704,274 | $ 408,851 | $ 860,518 |
| **Legal and Professional Fees** | | | | | | | |
| Debtor's Counsel | $ 60,000 | $ - | $ 30,000 | $ - | $ 30,000 | $ - | $ 120,000 |
| Debtor's Financial Advisor | $ 70,000 | $ - | $ 40,000 | $ - | $ 30,000 | $ - | $ 140,000 |
| Creditor's Committee Counsel | $ 38,335 | $ 13,333 | $ 13,333 | $ 13,333 | $ 13,333 | $ 13,333 | $ 105,000 |
| Creditor's Committee Financial Advisor | $ 25,000 | $ - | $ - | $ - | $ - | $ - | $ 25,000 |
| Litigation Counsel | $ 75,000 | $ - | $ - | $ - | $ - | $ - | $ 75,000 |
| Litigation - Expert Fees | $ - | $ - | $ - | $ - | $ - | $ - | $ - |
| **Ending Cash** | $ 958,064 | $ 895,981 | $ 773,107 | $ 762,024 | $ 630,941 | $ 395,518 | $ 395,518 |
| Cash Payment made to Bank (Escrow) | | | | | | | $ 110,000 |
| Retainer Payment made to Debtor's Financial Advisor | | | | | | | $ 25,000 |
| Adjusted Cash Balance | | | | | | | $ 530,518 |

Cash projections will vary due to prices as much as 10% in each week as well as corresponding jobber net fuel
[1] = All royalty fees subject to disposition resolution in connection with the BP Litigation.
[2] = Real Estate Tax reserve for the week ended 10/27 includes taxes for the month of September and October.
[3] = This Line Item does not reflect accrued, but unpaid expenses previously approved in prior budget periods, but which may be paid as applicable during this budget period.

1